IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT BOWMAN<br>Plaintiff, | § § § § | |
| v. | § § § | C. A. NO. 4:10-cv-03884<br>JURY TRIAL DEMANDED |
| WEATHERFORD<br>INTERNATIONAL, INC.,<br>Defendant, | § § § § § | |

**PLAINTIFF, ROBERT BOWMAN'S RESPONSE AND OBJECTION TO MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ADDITIONAL DISCOVERY**

Plaintiff Robert Bowman's files his Response to Defendant's Motion for Summary Judgment and Request for additional discovery:

**I.**

**STATEMENT OF THE CASE**

Lieutenant Robert Bowman received a Bronze medal in the U.S. Army. Bowman alleges that he was discharged from employment at Weatherford because he was a member of the military in violation of Texas Government Code §431.006 et seq. In the present case, it is our understanding that Robert Bowman's case does not include a USERRA stated claim. On March 28, 2011, the Court denied Robert Bowman's motion to amend his

1

complaint to include the USERRA claim. (See, dkt entry #28) The USERRA claim, which does not have a statute of limitations, may be separately filed by Robert Bowman.

## II.

## **DISPUTED FACTS**

1. Robert Bowman was hired by Weatherford in the position of MWD Field Engineer I on July 21, 2008. (Ex. 2, P. 26 lines 15-20). He was a member of the National Guards.

2. Bowman was advised by Weatherford's Military Recruitment Coordinator, Evola Edward in his interview that he would receive a $5,000 relocation allowance.

3. Weatherford's recruitment offer to Bowman included a company vehicle and approximate annual salary of $70,000. (Ex. 1). The actual salary Bowman received was only $26,400.

4. The MWD Field Engineer I, position was a trainee position. After completing the required training the MWD Field Engineer I, at Weatherford are automatically promoted to MWD Field Engineer II.

5. Corey Wellington, a non-military employee was promoted in 2010 to MWD Field Engineer II. (Ex. 6, Ex. 2 P. 78). Robert Bowman successfully completed Weatherford's MWD Field Engineer I, training. Bowman was not

promoted to the MWD Field Engineer II position.

6.   Weatherford claim they viewed Bowman's military responsibilities positively. However, according to Bowman, his supervisor, Enrique Salas commented to him:

> **you will need to work with Weatherford's work schedule versus your military drill schedule. It costs the company money to locate, find, and put a replacement on the drill site. It would cost a lot of money basically and create transportation issue just having you replaced was just–it was very inconvenient for the company to do that (Ex. 2, P. 27 and 28).**

7.   March 25, 2009, Bowman notified Weatherford, by email of his scheduled deployment to Iraq. (Ex. 5, Ex. 2 P. 36 and 37)  Bowman did not receive any jobs; an **entire month passed** before Weatherford place Bowman on a job site.  Bowman received the basic minimum pay of $1,200 per two week period.

8.   Bowman was offered a job site on April 27, 2009, when Weatherford knew he could not accept the position. (Ex. 2, P. 40-41 and P. 67-68)

9.   Weatherford knew Bowman was obligated to the Military and was scheduled for deployment during the same time as the job was offered.

10.   Because Enrique Salas, Mark MacFarlane received notification of Bowman's deployment and pre-mobilization training.  (Ex. 2, P. 40-41)

11.   A dedicated officer, Bowman fulfilled his military commitment.

12.  Bowman was discharged from Weatherford the next day after he declined Weatherford's new job, on April 28, 2009. (P. 21, lines 23-25).

13.  Bowman's discharge was a **month after** he notified Weatherford of his scheduled September 2009, deployment to Iraq. (Ex. 6)

14.  Bowman military experience or membership was a motivating factor in Weatherford's decision to discharge him.

15.  Edward Evola, Military Recruitment Coordinator for Weatherford International emailed Bowman on June 12, 2008. Evola's email did not indicate that company vehicle was assigned after 90 days of employment; assignment of company vehicle was depended on availability from Weatherford's fleet. (Ex. 1 and 5).

16.  In fact, Bowman was offered a company car only when Weatherford knew he could not accept the car due to leaving for military training. (Ex. 5 and 6).

17.  Enrique Salas, Bowman's immediate supervisor, **was not a** member of the Army National Guard. (Ex. 3). Salas did not serve in the Army in active duty in Iraq according to our research provided by the Department of Defense Manpower Data Center .[1](Ex. 3 and 6). Plaintiff requests the court

---

[1] The date of birth and social security number of Enrique Salas was not provided to Plaintiff during discovery. If a date of birth for Enrique Salas is provided a more conclusive authoritative answer to this question about his military service could be ascertained. A form DD-214 will address the military service question.

to order the defendant to answer one interrogatory question. The question would state: Please provide the complete name, social security number and date of birth of Enrique S. Salas. This information will verify and put to rest, Salas' claimed military membership and service in Iraq. (Ex. 3). This information is significant because it may show that Weatherford's decision maker, Enrique Salas was non-military. (See Ex. 3) *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 797-98 (8th Cir. 1996) and *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir. 2002) and *Bauer v. Albemarle Corp.* 169 F. 3d 962, 968 (5th Cir. 1999).

18. Enrique Salas was a decision-maker in Weatherford's decision to discharge Bowman.(Ex, 2)

### III.

### ARGUMENT AND AUTHORITIES

A. **Summary Judgment Standards**

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ P. 56 (c ); *Celotex Corp. v. Catrett*, 477 U.S. , 312 (1986); *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 506 F. 3d 1371, 1374 (Fed. Cir. 2007). The moving party bears the burden of identifying those portions of the

record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc*, 477 U.S 242, 255-57 (1986).

In considering whether genuine issues of material fact exist, the court must determine whether a reasonable jury could return a verdict for the nonmoving party in the face of all evidence presented. *Id.* at 249. <u>All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant.</u> *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) standards apply to this case. Plaintiff bears the initial burden of proving that discrimination has occurred. The employer bears the burden of proving that discrimination did not occur. After showing a prima facie case of a military violation, the burden of proof shifts to the employer to show that they did not discriminate against an employee due to his military membership.

6

*Gagnon v. Sprint Corp.*, 284 F.3d 839, 854 (8th Cir. 2002). The employer then has the burden of persuasion as well as the burden of production; to prove that the employer's adverse action was not motivated by an employee's military activity. *Sheehan v. Dep't of Navy,* 240 F. 3d 1009, 1013-1014 (Fed, Cir. 2001). In addition, the military activity of the employee need only be a substantial or motivating factor in the adverse employment decision and need not be the sole factor motivating the employer's adverse action.

**B. Plaintiff has Established That His Military Service was a Motivating Factor in His Termination**

The anti-military comment of Enrique Salas, along with : (1) the denial of a military personnel relocation allowance, (2) denial of automatic promotion to MWD II after completing training, (3) a company vehicle and (4) taking military personnel off of job sites for a month was the casual connection between Bowman's discharge from Weatherford. Robert Bowman was the only MWD Field Engineer Trainee off work for an entire month after completing the MWD training. (Ex. 2, P.77).

**1. Relocation Bonus**

Robert Bowman resided in Pensacola, Florida before he was hired by Weatherford. Bowman did not receive a promised relocation allowance of

$5,000 when he arrived in Houston, Texas. (Ex. 2, P. 22, lines 20-25 and P. 77). This relocation allowance was for persons who resided out of state. (Ex. 2, P. 22, 23). After several telephone calls and numerous emails to Enrique Salas, Bowman's direct supervisor, he never received an answer from Weatherford regarding the relocation allowance. Bowman never received a relocation allowance. (EX. 4a).

Joanna Wilson, Jarrid G. Haus and Raqule Valdivia three non-military, comparators each received a $1,000 relocation allowance. (Ex.4a) Bowman military service and membership was considered by Weatherford in denying him a relocation allowance. (Ex. 2, P. 47, line 4-19)

**2. Company Vehicle**

Bowman was promised a company vehicle, by Weatherford's recruiter Edward Evola. (Ex. 1). The job sites were rocky, rough terrain, in remote locations and usually Weatherford's company vehicle was a Ford F-150 truck. Cars were difficult to drive in these remote areas. Non-military MWD Field Engineers I and II received company vehicles while employed at Weatherford. (Ex. 2, P. 47-48) The Non-military person received vehicles within the first weeks or months of training at Weatherford. (Ex. 2, P. 77. lines 10-25) Bowman was offered a company vehicle, only when he was scheduled to be away in military drills. Weatherford knew he could not pick

up the vehicle. (Ex. 5 and 6)

**3. Special Pay for Tools Used**

Enrique Salas and Mark MacFarlane informed Robert Bowman that he would be offered special pay for certain tools he used at Weatherford, (Ex. 2, P.16, lines 1-17, P. 47). That was standard with MWD. If you were to use certain tools, you got a certain amount allotted every day for whatever that special tool was. (Ex. 2, P. 16, lines 7-12). Bowman never received the Supplemental Pay for tools. (Ex. 2, P. 18, lines 1-2) After asking his supervisor, Salas, Bowman was told by Salas he would receive these additional expenses when he completed his training. (lines 12-20, P.18, lines 18-24, and 1-3 and Ex. 2, P. 16,) Bowman successfully completed his training but never received the pay or a certificate of completion. (Ex. 2, P. 20 lines 2-11)

**4. Failure to promote-kept on Training Status Duration of employment**

Again, Bowman successfully completed Weatherford's required training for a MWD Field Engineer Trainee in the Drilling Services Business Unit. Unlike, his non-military counterparts who successfully completed Weatherford's training; Bowman was not immediately promoted to a MWD Field Engineer II position. (Ex. 2, P. 33 and 34, P. 72-73). Bowman was

kept on training status after he completed his training. (Ex. 2, P. 20, lines 22-25 and P. 21, lines 1-3, 18-20, P. 72-73). Non-military counterparts who successfully completed Weatherford's training were immediately promoted to MWD Field Engineer II and placed on more job sites. (Ex. 2, P. 77, lines 10-17, P. 34 and 35) All of Bowman's co-workers that were not in the National Guard or reservist were placed on jobsite. While Bowman sat out at home with no job assignment for an entire month. ( Ex. 2, P. 77, lines 17-19 and P. 28 an 29).

**E. Weatherford disingenuously offered Bowman a new job site, knowing that he couldn't work the job because he had received his Military deployment orders.**

Weatherford knew that Bowman was scheduled to be deployed to Iraq and offered him a new job site. (Ex. 5) This new job site forced Bowman to make a decision: either fulfill his military obligation or work for Weatherford. This was the nexus and consistent with the ultimatum given to Bowman by Enrique Salas: "you will need to work with Weatherford's work schedule versus your military drill schedule". (Ex. 2, P. 27- 28 and Ex. 6).

**C. <u>Weatherford can not establish that Bowman would have been laid off regardless of Bowman's Military Membership</u>**

Weatherford's stated reason for Bowman's discharge is false, reduction in force. In fact, the day before Robert Bowman was discharged incredibly, Weatherford **offered Bowman a new job** at a new worksite. (Ex. 2, P. 40-lines 4-22).Weatherford knew that Bowman couldn't accept the job due to his September 2009, scheduled deployment to Iraq. Yet, Weatherford finally offered Bowman a non-trainee position as a MWD Field Engineer II. If lay off was necessary, as Weatherford contends, the company arguably would not have offered Bowman a new job site the day before he was discharged. (Ex. 6)

.  **IV.**

**CONCLUSION**

Robert Bowman respectfully submits that Weatherford's Motion for Summary Judgment should be denied in its entirety and Bowman's case set for trial. The court should order Weatherford to produce the social security number and date of birth of Enrique S. Salas to verify his alleged military membership and service in Iraq.

                                            Respectfully submitted,

                                            /s/ Debra V. Jennings

By:_____
DEBRA JENNINGS
Texas Bar No. 10631850
Fed. Id 14373
6140 HWY 6, # 269
Missouri City, Texas, 77459
Tel. (832) 230-4455
Fax. (832) 230-4452
**ATTORNEY-IN–CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on May 13, 2011, a true and correct copy of Plaintiff's Response to Motions for Summary Judgment was served to R. Michael Moore by the District Court's Electronic Filing System.

R. Michael Moore


/s/ Debra V. Jennings
_____
Debra V. Jennings

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT BOWMAN** § | | |
| Plaintiff, § | | |
| § | | |
| § | | |
| v. § | C. A. NO. 4:10-cv-03884 | |
| § | | |
| § | JURY TRIAL DEMANDED | |
| **WEATHERFORD** § | | |
| **INTERNATIONAL, INC.,** § | | |
| § | | |
| Defendant, § | | |

## PROPOSED ORDER

On this ___ day of _____ 2011, the court DENIED , Defendant's Motion for Summary Judgment. The Court ordered Weatherford to produce the complete name, date of birth and social security number of Enrique Salas.

_____
Judge Presiding